UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No. 10-cv-02430-WYD-KLM

BRIAN WHITEMAN, and
SYLVIA WHITEMAN

    Plaintiffs,

v.

EL PASO CRIMINAL JUSTICE CENTER,
EL PASO COUNTY SHERIFF'S OFFICE,
EL PASO COUNTY,
JOHN DOES 1-3, whose true names and identities are unknown,

    Defendants.

_____

### ORDER ON MOTION TO DISMISS
_____

I.    INTRODUCTION

THIS MATTER is before the Court on review of Defendants El Paso Criminal

Justice Center, El Paso County Sheriff's Office, and John Does 1-3 [collectively "County

Defendants"] "Motion to Dismiss Third Amended Complaint (Doc. No. 33) Pursuant to

Fed.R.Civ.P. 8(a), and 12(b)(1) and 12(b)(6)" filed March 07, 2011.  The County

Defendants' motion seeks to dismiss Claims One, Two, Three, Five, Six and Seven of

Plaintiffs' Third Amended Complaint.

II.    BACKGROUND

Plaintiffs Brian Whiteman and Sylvia Whiteman [hereinafter "Mr. Whiteman" and

"Mrs. Whiteman", respectively, or "Plaintiffs" collectively] bring claims arising out of an

accident which occurred on or around October 7, 2008, while Mr. Whiteman was

incarcerated for a parole violation at El Paso Criminal Justice Center [hereinafter "the Jail"] in Colorado Springs .  Mr. Whiteman asserts that he suffered serious injuries as a result of falling down steel stairs at the Jail while he was heavily medicated and in a confused state.  (Third Am. Compl., ¶¶ 18-23).  Mr. Whiteman further asserts that this accident occurred at a time when "he was supposed to be, or should have been adequately and closely supervised by employees" of the Jail.  (*Id.*, ¶ 17.)

The complaint alleges that the accident occurred when Mr. Whiteman, "[a]lthough heavily medicated, and being an obvious danger to himself, . . . was allowed outside of his room, and allowed to climb the stairs unsupervised."  (Third Am. Compl., ¶ 18.)  It is alleged that a guard, John Doe 1, "who was also in charge of observing and supervising numerous inmates, was seated at his desk, approximately 100 feet away" from Mr. Whiteman when the accident occurred.  (*Id.*, ¶ 20.)  That guard, "who was supposed to be supervising MR. WHITEMAN did not notice MR. WHITEMAN, who had been heavily medicated and left unsupervised, slowly walking up a set of steel stairs."  (*Id.*, ¶ 21.)  When John Doe 1 did notice that Mr. Whiteman had climbed to the top of the stairs, the complaint alleges that instead of getting up and physically assisting Mr. Whiteman down the stairs", he "merely shouted at MR. WHITEMAN from his desk, to come back down." (*Id.*, ¶ 22.)  Soon thereafter, Mr. Whiteman fell down the steel stairs and was seriously injured.  (*Id.*, ¶ 23.)

The complaint asserts various claims related to the alleged violations of Mr. Whiteman's civil rights by Defendants.  The First Claim asserts a violation of the Eighth Amendment against Defendant John Doe 1 pursuant to 42 U.S.C. § 1983.  The Second Claim asserts failure to train and/or lack of policies resulting in constitutional

violations pursuant to § 1983 against John Does 2-3, the Jail, El Paso County Sheriff's Office ["Sheriff's Office"] and El Paso County ["the County"].  The Third Claim asserts a violation of the right to equal protection against John Doe 1 pursuant to 42 U.S.C. § 1981.  The Fourth Claim asserts a claim for attorney fees and costs under 42 U.S.C. § 1988.  The Fifth and Sixth Claims assert state law claims of negligent operation of a correctional facility against all the Defendants.  The Seventh Claim is a loss of consortium claim by Mrs. Whiteman.

III.    ANALYSIS

A.    Standard of Review

County Defendants' Motion to Dismiss seeks to dismiss the enumerated claims in the Third Amended Complaint pursuant to Fed. R. Civ. P. 8(a), 12(b)(1) and 12(b)(6). A motion to dismiss under Rule 12(b)(1) can be either:  (1) a facial attack on the sufficiency of the allegations in the complaint as to subject matter jurisdiction or (2) a challenge to the actual facts upon which subject matter jurisdiction is based.  *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002).  In a factual attack, a party may go beyond the allegations of the complaint and challenge the facts upon which subject matter jurisdiction is based.  *Stuart v. Colorado Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001).  The court may consider matters outside the pleadings in connection and the motion is not converted to a motion for summary judgment.  *Id.*  Here, the County Defendants mount a factual attack to subject matter jurisdiction regarding the Fifth, Sixth and Seventh claims for relief.  Thus, their reliance on materials outside the pleadings as to their argument does not require that the motion be converted to a Rule 56 motion, and I will consider those materials under Rule 12(b)(1).

As to the portion of the motion that seeks dismissal under Rule 12(b)(6), the court must "accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff." *Jordan-Arapahoe, LLP v. Board of County Com'rs of County of Arapahoe*, 633 F.3d 1022, 1025 (10th Cir. 2011). "To survive a 12(b)(6) motion to dismiss, a plaintiff must allege that 'enough factual matter, taken as true, [makes] his claim for relief ... plausible on its face.'" *Id.* (quotation and internal quotation marks omitted). "A claim has facial plausibility when the [pleaded] factual content [ ] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1940 (2009). Plaintiff "must include enough facts to 'nudge[] [his] claims across the line from conceivable to plausible.'" *Dennis v. Watco Cos., Inc.*, 631 F.3d 1303, 1305 (10th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Conclusory allegations are not sufficient to survive a motion to dismiss. *Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009).

The Tenth Circuit has stated that "if matters outside the pleading are presented to and not excluded by the court, [a Rule 12(b)(6) motion] shall be treated as one for summary judgment and disposed of as provided in Rule 56. . . ." *David v. City & County of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996). Conversion of a motion to dismiss to a Rule 56 motion is also proper where the plaintiff's response attaches materials outside the pleadings which are considered by the court in deciding the motion. *See Whitesel v. Sengenberger*, 222 F.3d 861, 866 (10th Cir. 2000). However, courts have broad discretion in determining whether or not to accept materials beyond the pleadings. *Lowe v. Town of Fairland,* 143 F.3d 1378, 1381 (10th Cir. 1998). Plaintiffs in this case

-4-

attached materials to their response which they argued should be considered in connection with claims sought to be dismissed under both Rules 12(b)(1) and 12(b)(6). While I will consider them for purposes of whether dismissal is appropriate under Rule 12(b)(1), as discussed previously, I will not consider them as to claims sought to be dismissed pursuant to Rule 12(b)(6).  Thus, I am not required to convert the motion to dismiss into a summary judgment motion.

Finally, "[u]nder Rule 8, a plaintiff must provide a 'short and plain statement of the claim showing that the pleader is entitled to relief.'"  *Tuttamore v. Lappin*, No. 10-1524, 10-1558, 10-1050, 2011 WL 1468369, at *2 (10th Cir. April 19, 2011) (quoting Fed. R. Civ. P. 8(a)(2)).  As with Rule 12(b)(6), "to overcome a motion to dismiss, a plaintiff's allegations must move from conceivable to plausible."  *Id.*  Indeed, "Rule 8(a)'s mandate. . . has been incorporated" into the 12(b)(6) inquiry."  *U.S. ex rel. Lemmon v. Envirocare of Utah*, 614 F.3d 1163, 1171 (10th Cir. 2010).

  B. <u>Whether Dismissal of Plaintiffs' Claims is Appropriate</u>

   1. <u>First Claim for Relief</u>

Plaintiffs' First Claim asserts that John Doe 1's deliberate indifference subjected Mr. Whiteman to cruel and unusual punishment under the Eighth Amendment to the United States Constitution.  The Eighth Amendment provides protection against cruel and unusual punishment.  This protection imposes a duty on prison officials to maintain humane conditions of confinement, including a duty to provide inmates with reasonable protections from bodily harm.  *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008).  In order to establish that John Doe 1 violated Mr. Whiteman's Eighth Amendment rights, Plaintiffs must allege facts that, if taken to be true for purposes of the motion, would

support the contentions that 1) an inhumane condition of confinement existed, and 2)

John Doe 1 acted with "deliberate indifference" to Mr. Whiteman's safety and rights. *Id.*

"To prevail on a 'conditions of confinement' claim under the Eighth Amendment,

an inmate must establish that (1) the condition complained of is 'sufficiently serious' to

implicate constitutional protection, and (2) prison officials acted with 'deliberate

indifference' to inmate health or safety." *DeSpain v. Uphoff*, 264 F.3d 965, 971 (10th

Cir. 2001) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (internal quotations

marks omitted).  As to the first requirement, an inmate must show that he is

incarcerated under conditions posing a substantial risk of serious harm. *Id.*

The deliberate indifference requirement provides that a prison official must act

wanton or willfully and have a "'sufficiently culpable state of mind'". *Farmer*, 511 U.S. at

834-35 (quotation omitted).  "[T]he Supreme Court has explained that 'deliberate

indifference entails something more than mere negligence ... [but] something less than

acts or omissions for the very purpose of causing harm or with the knowledge that harm

will result.'" *DeSpain*, 264 F.3d at 972 (quoting *Farmer*, 511 U.S. at 835).  "The Court

defined this 'deliberate indifference' standard as equal to 'recklessness,' in which 'a

person disregards a risk of harm of which he is aware.'" *Id.* (quoting *Farmer*, 511 U.S.

at 836-37).

The test for deliberate indifference is both objective and subjective. *Martinez v.

Beggs*, 563 F.3d 1082, 1088 (10th Cir.), *cert. denied*, 130 S. Ct. 259 (2009).  "The

objective component of the test is met if the 'harm suffered rises to a level sufficiently

serious to be cognizable under the Cruel and Unusual Punishment Clause' of the Eighth

Amendment." *Id.* (quoting *Mata v. Saiz*, 427 F.3d 745, 752-53 (10th Cir. 2006)) (further

quotation omitted).  I find that the objective test is met in this case because the harm

suffered rises to a level sufficiently serious to be cognizable under the Cruel and

Unusual Punishment Clause of the Eighth Amendment.  The "ultimate harm" that

Mr. Whiteman suffered from falling down the stairs while medicated was serious injuries

with medical, hospital, and rehabilitation bills exceeding $40,000.  (Third Am. Compl.,

¶ 24.)  *See Martinez*, 563 F.3d at 1088 ("'the ultimate harm to Mr. Ginn, that is, his heart

attack and death, w[as], without doubt, sufficiently serious to meet the objective

component'") (quotation omitted).  Thus, I turn to the subjective component.

     To prevail on the subjective component of the deliberate indifference test, an

inmate must show that the prison official 1) knows of a substantial risk of serious harm

posed to the inmate and 2) disregards that risk by failing to take reasonable steps to

abate the risk.  *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006).  To

recklessly disregard a risk, "[a] prison official must both be aware of facts from which the

inference could be drawn that a substantial risk of harm exists, and he must also draw

that inference."  *Farmer,* 537 U.S. at 837.  "[E]ven if a prison official has knowledge of a

substantial risk of serious harm to inmates, he is not deliberately indifferent to that risk

unless he is aware of and fails to take reasonable steps to alleviate that risk."  *Id.*  "The

factfinder may conclude that a prison official subjectively knew of the substantial risk of

harm by circumstantial evidence or 'from the very fact that the risk was obvious.'"

*Martinez*, 563 F.3d at 1089 (quotation marks omitted).  Symptoms of an inmate may be

relevant to the subjective component.  "The question is: 'were the symptoms such that a

prison employee knew the risk to the prisoner and chose (recklessly) to disregard it?'"

*Id.* (quotation omitted).

Finally, the Tenth Circuit has indicated that the subjective component requires the prison official to disregard the specific risk of harm claimed by the prisoner, not a more general risk.  *Id.*  For example, in *Estate of Hocker v. Walsh*, 22 F.3d 995, 997 (10th Cir. 1994), Hocker was placed in a detention center while intoxicated and at times was incoherent or would not wake up.  Two days later, she was discovered dead in her cell, having hanged herself.  *Id.*  The plaintiffs argued that the detention center's policy of admitting intoxicated and unconscious individuals showed deliberate indifference, but the Tenth Circuit disagreed.  *Id.*  It concluded "that the plaintiffs were required to show that defendants were deliberately indifferent to the *specific risk* of suicide, and not merely to the risk of intoxication."  *Id.*

Similarly, in *Martinez*, an intoxicated person had been arrested and died after being placed into detention.   563 F.3d at 1086-87.  The cause of death was a heart attack due to coronary disease, not intoxication.  *Id.* at 1087.  The court held that the plaintiffs had to show that the defendants subjectively disregarded the risk of the claimed harm at issue - death and heart attack, not merely the risk of intoxication.  It further indicated that a general awareness of the potential for harm is not enough; there must be a connection between the subjective disregard of a risk of serious harm and the objective harm actually claimed.  *Id.* at 1089 n. 8.

Applying that rationale to the instant case, Plaintiffs need to have alleged facts that plausibly show that Defendant John Doe 1 subjectively disregarded the risk of Mr. Whiteman sustaining serious harm from climbing and then falling down the stairs while medicated.  The fact that Mr. Whiteman was "heavily medicated" and an "obvious

danger to himself" are not sufficient risks in and of themselves.[1]  Plaintiffs must also show that Defendant John Doe 1 failed to take reasonable steps to abate the specific risk mentioned above.

The County Defendants argue as a matter of law that the facts alleged in the complaint are insufficient to plausibly suggest that Defendant John Doe 1 had knowledge of the specific risk at issue.  Without knowledge of that specific risk, they argue that Mr. Whiteman cannot prove deliberate indifference and he thus fails to state a claim for which relief may be given.

Turning to my analysis, I first reiterate that I have not considered Mr. Whiteman's affidavit or other evidence attached to the response, as I find that this portion of the motion to dismiss seeking dismissal under Rule 12(b)(6) should be decided by reference to the allegations of the complaint.  Turning to those allegations, Mr. Whiteman alleges that he was recklessly allowed to wander through the prison unsupervised "in an areas [sic] with reasonably foreseeable dangers" (Third Am. Compl., ¶ 32) and to climb the stairs, yet he also alleges that Defendant John Doe 1 had no knowledge that he had wandered away or climbed the stairs.  Further, there are no allegations that Mr. Whiteman had ever previously climbed the stairs and/or that Defendant John Doe 1 knew this.  A defendant must have knowledge of the risk, in order to reasonably abate it.  *See Tafoya*, 516 F.3d at 912 ("An official's failure to alleviate a significant risk of which he is unaware, no matter how obvious the risk or how gross his negligence in failing to perceive it, is not an infliction of punishment and

---

[1]  I also find that the allegation that Mr. Whiteman was an "obvious danger to himself" is conclusory and is thus "not entitled to be assumed to be true".  *Iqbal*, 129 S. Ct. at 1951.

therefore not a constitutional violation.")  Thus, I find that dismissal is appropriate as to this portion of the claim.

The real issue is whether, once John Doe 1 knew that Mr. Whiteman had climbed the stairs, he subjectively knew of a substantial risk of harm and disregarded that risk by failing to take reasonable steps to abate the risk.  Plaintiffs allege as to the risk of harm that "[d]ue to the physical and mental impairments, caused by being heavily medicated from the required medication given to him at the [jail], MR. WHITEMAN was supposed to be, or should have been kept on the first floor of the facility and under close supervision, so that he would not harm himself."  (Third Am. Compl., ¶ 15.)  Accepting this as true for purposes of the motion, I find even though it is not specifically alleged that it is plausible John Doe 1 was aware of this, as he was "in charge of observing and supervising" the inmates.  (*Id.*, ¶ 21.)  Plaintiffs also contends that Mr. Whiteman's medication caused him "extreme mental confusion and obvious unsteadiness."  (*Id.*, ¶ 12.)  Again, I find it plausible that John Doe 1 knew of this.

It is also alleged by Plaintiffs that, prior to the accident and while Mr. Whiteman was under the care and supervision of the Jail and while being heavily medicated, he had several instances of confusion and unsteadiness in which inmates and [unnamed] deputies had to show him where his bed was located.  (Third Am. Compl., ¶ 13.)  Further, it is alleged that prior to the accident, Mr. Whiteman "had collapsed on several occasions and experienced blurry vision and sleep walking."  (*Id.*, ¶ 14.)  Although it is unclear from the complaint, it is plausible that Defendant John Doe 1 may have known of at least some of these incidents.

-10-

I conclude from the foregoing that it is plausible that Plaintiffs can prove the subjective element—that once John Doe 1 saw that Mr. Whiteman had ascended the stairs, he was aware that there was a substantial risk of harm that Mr. Whiteman may harm himself descending the stairs and disregarded that risk by failing to take reasonable steps to abate the risk. This is an issue that will turn on the evidence and what specifically John Doe 1 was aware of in connection with Mr. Whiteman's condition while medicated. Accordingly, I find that dismissal of this claim at this stage of the litigation is improper, and the County Defendants' Motion to Dismiss is denied as to the First Claim.

2.     Second Claim for Relief

Plaintiffs' Second Claim arises under 42 U.S.C. § 1983 for Failure to Train and/or Supervise Employees and Lack of Policies resulting in Constitutional Violations. To establish municipal liability based on a policy, Plaintiffs "must show: 1) the existence of a municipal policy or custom and 2) a direct causal link between the policy or custom and the injury alleged." *Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989)). As to the second requirement, the plaintiff must "demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Bd. Of County Comm'rs v. Brown*, 520 U.S. 397, 399 (1997) (emphasis in original).

Plaintiffs first allege that "John Does 2-3, the Sheriff's Office, the Jail and the County were reckless or grossly negligent in that they failed to train and supervise employees of the County in the proper supervision of heavily medicated inmates and this failure resulted in serious and permanent injuries to Mr. Whiteman." (Third Am.

Compl., ¶ 40.)  Plaintiffs also assert that "[a]s demonstrated by this reckless or grossly negligent behavior . . . there are significant and serious problems in the department's policies regarding training and supervision." (*Id.*, ¶ 41.)  "It is clear that the department has been reckless and grossly negligent in its training and supervision, and lack appropriate policies to guard against the injuries suffered, as these clear violations of the Plaintiff's civil rights would unlikely had occurred if they were properly trained." (*Id.*)

I find as to this portion of the claim that it does not appear Plaintiffs have identified a specific policy or custom or the problems that exist with regard to a specific policy or custom.  Even if I assume that they satisfied the first requirement in connection with identification of a policy, the allegations do not demonstrate how the alleged failure to train or supervise or how unspecified problems with the policies regarding training and supervision were the moving force behind Mr. Whiteman's injuries.  As noted in a recent Tenth Circuit case, "[m]unicipal liability based on a policy of inadequate training requires proof that the policy 'reflect[ed] a deliberate or conscious choice by a municipality.'"  *Lewis v. McKinley County Bd. of County Com'rs*, Nos. 10-2221, 11-2000, 2011 WL 2194013, at *2 (10th Cir. June 7, 2011) (quoting *City of Canton,* 489 U.S. at 389) (internal quotation marks omitted)); *see also Bryson v. City of Oklahoma City*, 627 F.3d 784, 789 (10th Cir. 2010) ("the City cannot be liable for its failure to train or supervise . . . unless the City's policymakers 'can reasonably be said to have been deliberately indifferent to the need' for further training or supervision'"), *cert. denied*, ___ S. Ct. ___ (June 20, 2011) (No. 10-1263) (quotation omitted).  "This may be demonstrated 'when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it

-12-

consciously or deliberately chooses to disregard the risk of harm.'" *Lewis*, 2011 WL 2194013, at *2 (quoting *Barney v. Pulsipher,* 143 F.3d 1299, 1307 (10th Cir. 1998)). The complaint does not contain any allegations that can plausibly be interpreted to meet this requirement as to the Jail, the Sheriff's Office or the County.

I also note as to Defendants John Does 2 and 3 that a supervisory relationship alone is insufficient for liability under §1983. *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010), *cert. denied*, 131 S. Ct. 2150 (April 25, 2011). In other words, vicarious liability is inapplicable in a § 1983 claim. *Id.* "§ 1983 allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy the enforcement (by the defendant-supervisor or her subordinates) of which 'subjects, or causes to be subjected' that plaintiff 'to the deprivation of any rights ... secured by the Constitution ....'" *Id.* at 1199 (quoting 42 U.S.C. § 1983)).

When a plaintiff sues an official under . . . §1983 for conduct 'arising from his or her superintendent responsibilities,' the plaintiff must plausibly plead and eventually prove not only that the official's subordinates violated the Constitution, but that the official *by virtue of his own conduct and state of mind* did so as well." *Dodds*, 614 F.3d at 1198 (emphasis added) (quoting *Iqbal*, 129 S. Ct. at 1949). Plaintiff may also need to show "'an affirmative link ... between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise'", although the Tenth Circuit has not definitively decided this issue *post-Iqbal*. *Id.* (quoting *Gallagher v. Shelton,* 587 F.3d 1063, 1069 (10th Cir.2009)).

Plaintiffs fail to adequately allege any personal participation as to John Does 2 and 3 or facts that show that the exercise of control or direction by John Does 2 and 3. They also do not show that John Does 2 and 3 promulgated, created, implemented or possessed responsibility for a policy that caused the alleged constitutional harm, or that they acted with the state of mind required to establish liability.  While Plaintiffs' response reprints selected paragraphs from the complaint and submits that "their allegations, each of which incorporates by reference the previous facts and allegations, allege both active participation and/or acquiescence of the supervisor in the constitutional violation…." (Response, pp. 7-8.), I find that the allegations are "bare assertions" which do not show personal participation or allow the Court to plausibly infer liability of John Does 2 and 3.  Instead, they amount largely to a "'formulaic recitation of the elements' of a constitutional" § 1983 claim.  *Iqbal*, 129 S. Ct. at 1951 (quoting *Twombly*, 550 U.S. at 555.)  That is not sufficient to state a claim.

Plaintiffs also argue that "the deputes and/or other employees had a policy or practice of allowing persons who are heavily medicated to be in the vicinity of a steel stairwell that would be dangerous to such a person in a medicated state."  (Pl.'s Resp. at 5.)  As to this issue, municipal jails have a duty to take reasonable steps to guarantee the inmates' safety.  *DeSpain*, 264 F.3d at 974.  However, Plaintiffs cite no authority for the proposition that a correctional facility may not have "stairs in the vicinity of" inmates receiving medication.

In the context of this claim, Plaintiffs have to show that the Jail maintained a policy and/or custom which created a substantial risk that Mr. Whiteman would be harmed.  *Bass v. Pottawatomie County Public Safety Center,* No. 10-6215, 2011 WL

2193835, at *6 (10th Cir. June 7, 2011).  I do not find that Plaintiffs have established

that the alleged policy at issue—allowing persons who are heavily medicated to be in

the vicinity of a steel stairwell—created a substantial risk that an inmate such as

Mr. Whiteman would fall down the stairs and sustain serious injury.  Instead, the alleged

harm would arise only if the inmates were not reasonably monitored in that situation by

the employees and allowed to climb up and down the stairs, which is not part of the

alleged policy.

Accordingly, the municipal liability claim based on a policy or lack thereof must be

dismissed.  *See Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1275 (10th Cir.

2009) (a municipality may not be held liable under § 1983 for the acts of its employees

unless they are policy makers or unless the municipality itself has adopted an

unconstitutional law, custom, or policy"); *see also Iqbal*, 129 S. Ct. at 1952

("Respondent does not argue, nor can he, that such a [policy] would violate petitioner's

constitutional obligations.  He would need to allege more by way of factual content to

'nudg[e]' his claim. . . 'across the line from conceivable to plausible") (quoting *Twombly*,

550 U.S. at 570).  Indeed, if allegations are "so general that they encompass a wide

swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims

across the line from conceivable to plausible."  *Bryson v. Gonzales*, 534 F.3d 1282,

1286 (10th Cir. 2008).

Even assuming, *arguendo*, that the identification of a policy of "allowing persons

who are heavily medicated to be in the vicinity of a steel stairwell" is sufficient to state a

claim of municipal liability based on an unconstitutional policy, *i.e.*, if I assume that this

policy created a substantial risk of serious harm to medicated individuals such as

Mr. Whiteman, Plaintiffs cannot and do not allege facts to support "deliberate indifference" on the part of the Jail, Sheriff's Office or the County.  The Third Amended Complaint is silent as to allegations that these entities or their policy-makers had a sufficiently culpable state of mind - *i.e.*, that they were actually aware of and deliberately disregarded this excessive and specific risk.  *Bass*, 2011 WL 2193835, at *6; *see also Powell v. City and County of Denver*, 973 F. Supp. 1198, 1204 (D. Colo. 1997) ("'To establish a claim based on custom, a plaintiff must prove . . . [d]eliberate indifference to or tacit approval [of unconstitutional] misconduct [of the municipality's employees] by the ... [municipality's] policymaking officials ... after notice to the officials of that particular misconduct. . .") (quoting *Gates v. Unified School Dist. No. 449*, 996 F.2d 1035, 1041 (10th Cir. 1993)).  Further, Plaintiffs do not allege that the unspecified "deputies or other employees" who allegedly adopted the alleged policy or practice were policy makers or that they advised the policy makers about this policy or practice.

Based on the foregoing, I find that the County Defendants' motion to dismiss should be granted as to Plaintiff's Second Claim.

3.    Third Claim for Relief

The Third Claim asserts a violation of the right to equal protection pursuant to 42 U.S.C. §1981 by John Doe 1.  I find that this claim must also be dismissed.  First, to the extent Plaintiffs seek to impose individual liability on Deputy John Doe 1 for conduct in the Jail on the date of the accident, Plaintiffs' claim fails for lack of personal participation.  No facts demonstrate that John Doe 1 exposed Mr. Whiteman to any disparate treatment on the date of the fall down the stairs or any other date.  Also, to the extent Plaintiffs in paragraph 45 of the Third Amended Complaint appear to assert that

"any defendant" who attempts to invoke the protections of immunity under the Colorado Governmental Immunity Act ["CGIA"] to defend this claim violates the equal protection clause, Plaintiffs have provided and I have not found any authority to support such a claim under either an individual or a municipal liability theory.

To the extent this claim challenges the constitutionality of Colo. Rev. Stat. § 24-10-106(1.5), the Colorado Court of Appeals directly addressed this issue in *Davis v. Paolino*, 21 P.3d 870 (Colo. Ct. App. 2001), and found the statute to be constitutional. *Davis* recognized that while the Fourteenth Amendment guarantees equal protection to similarly situated persons, "such guarantees do not . . . prevent the General Assembly from placing limitations on governmental liability for damages in tort, even if such limitations work favorably for some but not for others." *Id.* at 872 (citing *Norsby v. Jensen*, 916 P.2d 555 (Colo. Ct. App. 1995)). "In the absence of a statutory infringement on a fundamental right or the creation of a suspect class, neither of which is involved here, equal protection is satisfied if the statutory classification has a reasonable basis in fact and bears a reasonable relationship to a legitimate governmental interest. *Id.* The *Davis* court held that § 24-10-106(1.5) is rationally related to the legitimate state interests of fiscal solvency and provision of essential services while minimizing taxpayer burdens. *Id.* In light of this, I find that Plaintiffs have not and cannot show that the statute is unconstitutional.

Finally, Plaintiffs failed to show that they complied with Colo. Rev. Stat. §13-51-115. Where the constitutionality of a state statute is challenged by declaratory judgment, Plaintiffs must give the Attorney General notice and an opportunity to be heard. Plaintiffs' failure to provide this notice also requires dismissal of this claim.

-17-

4.      Fourth Claim for Relief

Plaintiffs' Fourth Claim seeks attorneys' fees pursuant to 42 U.S.C. § 1988 in

connection with the claims asserted under 42 U.S.C. §§ 1981 and 1983.  While the

County Defendants did not expressly seek to dismiss this claim, it appears they

assumed it would be dismissed when the §§ 1981 and 1983 claims were dismissed.

However, since I have denied the County Defendants' motion to dismiss as to Claim

One asserted under § 1983, I find that this claim also should not be dismissed.

5.      Fifth and Sixth Claims for Relief

Plaintiffs' Fifth and Sixth Claims for relief asserted against all the Defendants are

state law claims for negligent operation of a correctional facility.  County Defendants

contend, and I agree that these tort claims against the public entities are barred by the

CGIA.  A public entity or employee is immune from all claims that lie or could lie in tort,

unless the claim falls within one of the six limited areas for which immunity has been

waived or unless the act or omission causing the injury was willful and wanton." *Moody*

*v. Ungerer*, 885 P.2d 200, 204 (Colo. 1991) (citing Colo. Rev. Stat. § 24-10-118(2)).

Plaintiffs assert a waiver based on the exception for the operation of a

correctional facility as set forth in Colo. Rev. Stat. § 24-10-106(1)(b).  However, that

waiver of sovereign immunity "does not apply to claimants who have been convicted of

a crime and incarcerated in a correctional facility or jail pursuant to such conviction, and

such correctional facility or jail shall be immune from liability as set forth in subsection

(1) of this section." *Id.*, § 24-10-106(1.5)(a).  Instead, the waiver of sovereign immunity

created in paragraph (b) applies "to claimants who are incarcerated but not yet

-18-

convicted of the crime for which such claimants are being incarcerated if such claimants can show injury due to negligence." *Id.*, § 24-10-106(1.5)(b).

In the case at hand, I agree with Defendants that the evidence submitted on this issue shows that Mr. Whiteman was previously convicted of a misdemeanor and given probation.  He then committed a parole violation, meaning that his parole was revoked and he was incarcerated in connection with the original misdemeanor count.  (*See* Pl.'s Ex. C to Response Brief).[2]  Thus, at the time this action was brought, Mr. Whiteman had been convicted of a crime (misdemeanor) and was incarcerated pursuant to that conviction after he violated his parole conditions.  As such Mr. Whiteman's claims are barred by sovereign immunity and dismissed for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).[3]

Plaintiffs' Sixth Claim also, however, alleges willful and wanton conduct by Defendant John Doe 1.  (Third Am. Compl., ¶ 64.)  That takes it outside the realm of sovereign immunity.  Colo. Rev. Stat. § 24-10-118(1); *see also Moody*, 885 P.2d at 204. Defendants argue and I agree that this claim must be dismissed as untimely under the statute of limitations.  Under Colorado law tort actions, "regardless of the theory upon which suit is brought, or against whom suit is brought, shall be commenced within one year after the cause of action accrues, and not thereafter.  Colo. Rev. Stat. §13-80-103. Section 13-80-103(b) explicitly states that this limitation includes "[a]ll actions against

---

[2]  Plaintiff's affidavit to the contrary cannot overcome the plain language of the Court's records.

[3]  I also note that Plaintiffs' argument that he was incarcerated pursuant to the contempt of court warrant that brought him into court on the probation charge rather than the original charge would lead to an absurd result—that post conviction detainees who were initially sentenced to incarceration immediately after conviction would not be able to sue, but post conviction detainees who were sentenced to incarceration only after committing probation and parole violations would be able to sue.

sheriffs, coroners, police officers, firefighters, national guardsmen, or any other law enforcement authority."  The alleged injury occurred on October 7, 2008, and Plaintiffs filed their complaint almost two years later, on October 6, 2010.  Accordingly, Plaintiffs' claim against John Doe 1 is time-barred under the one year statute of limitations.

Finally, it appears from Plaintiffs' response that they are arguing that the Sheriff's Office is vicariously liable for the willful and wanton acts of its employees.  However. any claim against the Sheriff's Office is also barred, as "a public entity is not liable for the willful and wanton conduct of its employees unless the conduct falls within one of the waiver provisions of § 24-10-106."  *Carothers v. Archuleta County Sheriff*, 159 P.3d 647, 654 (Colo. Ct. App. 2006).  Likewise, a public entity cannot be deemed to have waived sovereign immunity by virtue of its own willful and wanton conduct where the allegations do not otherwise fall within a waiver provision.  *Id.*

6.   Seventh Claim for Relief

Plaintiffs' Seventh Claim is a state law claim for loss of consortium.  A loss of consortium gives rise to a separate and individual right of recovery on behalf of the claiming spouse, and is an injury under the CGIA.  *Smith v. Winter*, 934 P.2d 885, 887 (Colo. Ct. App.1997).  Indeed, a loss of consortium claim does not necessarily arise at the same time as the underlying claim.  *Id.*  Because it is a separate claim, the Colorado Court of Appeals held in *Smith* that a spouse may not maintain a claim for loss of consortium unless the spouse submits his or her own written notice of claim in accordance with the CGIA.  Here, it is undisputed that Mrs. Whiteman did not submit her own written notice of claim under the CGIA.  Accordingly, *Smith* requires dismissal of this case as to the Jail, the Sheriff's Office and the County who are all public entities.

Plaintiffs also claim that the CGIA requirements do not apply to the individual deputies being sued.  Again I disagree.  Plaintiffs rely on the case of *Antonopoulos v. Town of Telluride*, 532 P.2d 346, 397 (Colo. 1975), which held that the legislature's enactment of the CGIA was without effect on a police officer's vulnerability to liability. That case was, however, superseded by statute in 1979 when the Colorado General Assembly enacted Colo. Rev. Stat. 24-10-118 which required written notice to public employees.  *See Glaser v. City, County of Denver, Colo.*, No. 08-cv-02269-LTB-BNB, 2010 WL 936105, at *6 (D. Colo. Jan. 28, 2010).  The current version of the statute, Colo. Rev. Stat. § 24-10-109, also provides that written notice under the CGIA must be provided as to the public entity or its employees.  *Id.*  Accordingly, I find that Plaintiff Mrs. Whiteman's claim of loss of consortium must be dismissed.

IV.     CONCLUSION

In conclusion and for the reasons stated above, it is

ORDERED that County Defendants' Motion to Dismiss Third Amended Complaint (Doc. No. 33) Pursuant to Fed.R.Civ.P. 8(a) and 12(b)(1) and 12(b)(6) filed March 14, 2011 (ECF No. 36) is **GRANTED IN PART AND DENIED IN PART**. Specifically, it is

ORDERED that the Motion to Dismiss is **GRANTED** as to Claims Two, Three, Five, Six and Seven and those claims are **DISMISSED**.  Defendants El Paso County Criminal Justice Center, El Paso County Sheriff's Office, El Paso County, and John Does 2 and 3 are also **DISMISSED** and shall hereafter be taken off the caption.  The

Motion to Dismiss is **DENIED** as to Claims One and Four, which remain pending as to

John Doe 1, the only remaining Defendant.

Dated:  July 1, 2011

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge